UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | * | |
| SHAWN DRISCOLL and CYNTHIA DRISCOLL, | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 19-cv-12302-ADB |
| | * | |
| KATHLEEN MCCANN and FRANK MCCANN, | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO COMPEL

BURROUGHS, D.J.

This personal injury case arises from a motor vehicle accident that took place in

Chatham, Massachusetts on September 29, 2018. [ECF No. 1 at 2]. Plaintiff Shawn Driscoll

("Plaintiff") alleges that he was riding his motorcycle down Main Street when Defendant

Kathleen McCann ("Defendant") pulled onto Main Street from a side street and collided with

him. [Id.]. Plaintiff seeks damages for medical expenses and lost earnings. [Id.]. Currently

before the Court is Defendant's motion to compel production of certain of Plaintiff's financial

records, including his personal tax returns and tax returns for his business. [ECF No. 30]. For

the following reasons, the motion, [ECF No. 30], is GRANTED in part and DENIED in part.

## I.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(b), parties are entitled to discovery

"regarding any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26 is "construed broadly to

encompass any matter that bears on, or that reasonably could lead to other matters that could

bear on, any issue that is or may be in the case." Enargy Power (Shenzhen) Co. v. Wang, No. 13-cv-11348, 2014 WL 4687784, at *2 (D. Mass. Sept. 17, 2014) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). "District courts exercise broad discretion to manage discovery matters," Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003), and "to tailor discovery narrowly," Cutter v. HealthMarkets, Inc., No. 10-cv-11488, 2011 WL 613703, at *2 (D. Mass. Feb. 10, 2011) (quoting Crawford-El v. Britton, 523 U.S. 574, 598 (1998)). When exercising this discretion, courts are mindful of the proportionality considerations articulated in Rule 26(b)(1). Fed. R. Civ. P. 26(b)(1).

"A court must limit discovery if it determines that the discovery sought is (1) unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the projected discovery in resolving the issues." In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig., No. 13-cv-02419, 2014 WL 12814933, at *2 (D. Mass. Feb. 7, 2014); see also Fed. R. Civ. P. 26(b)(2)(C).

As the party resisting discovery, Plaintiff bears "the burden of showing some sufficient reason why discovery should not be allowed." Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc., 730 F. Supp. 1165, 1186 (D. Mass. 1989) (quoting Kozlowski v. Sears, Roebuck & Co., 73 F.R.D. 73, 76 (D. Mass. 1976)).

> Merely because compliance with a "Request for Production" would be costly or
> time-consuming is not ordinarily sufficient reason to grant a protective order where
> the requested material is relevant and necessary to the discovery of evidence. . . .
> [Where] the plaintiff has a demonstrable need for the documents, the defendant
> undisputedly has possession of them, and the plaintiff has no other access to them
> . . . . the defendant has a duty pursuant to Rule 34 to produce [responsive
> documents].

Kozlowski, 73 F.R.D. at 76 (internal citations omitted).

## II.    DISCUSSION

Plaintiff is the President, Director, and sole shareholder of H.F.S. of America, Inc., which

does business as Hills Home Market (the "Company").  [ECF No. 30-6 at 5; ECF No. 32-1 at

1–2].  Plaintiff claims that, because of the accident, he was, "except for brief telephone calls[,]

totally incapacitated from work through December 26, 2018 [and] partially incapacitated from

work through approximately the end of March 2019."  [ECF No. 30-6 at 5].  He further claims

that he has lost earnings of approximately $58,988.55 due to the accident.  [ECF No. 30-6 at 4].

According to Plaintiff, because he is its sole shareholder, he is free to spend the Company's net

income as he wishes, including by electing to "pay business bills, reinvest in the business, carry

over into the next year, make a nontaxable contribution to his retirement account or any number

of different options."  [ECF No. 32-1 at 5].  To arrive at $58,988.55, Plaintiff compared the

Company's net income in years when he was not incapacitated to its net income in 2018 and

2019.  [ECF No. 30-7 at 2–3].  At bottom, Plaintiff's assertion is that, had he not been injured,

the Company would have made $58,988.55 more than it did, and that he, as sole shareholder,

could have spent that money as he pleased.  [Id.].

Plaintiff produced two years of "Profit and Loss Reports" ("P&Ls") from the Company.

[ECF No. 30-4 at 3].  After Defendant argued that producing such financial reports for only two

years was insufficient, Plaintiff produced annual P&Ls dating back to 2015, as well as six-month

reports for October through March of 2015–2020 to reflect the particular months during which

Plaintiff was allegedly unable to work.  [ECF No. 32-1 at 2].

Still unsatisfied with Plaintiff's production, Defendant seeks to compel the production of:

1.    Profit and Loss Reports for [the Company] with Monthly Data in Electronic
Spreadsheet Format for the five years prior to the accident to present;

2.    Monthly Balance Sheets for [the Company] for the five years prior to the
accident to present;

3.    Payroll Reports for the following periods:

      i. Year End Payroll Summary Reports for five years prior to the
      accident to present;

      ii. January 1, 2018 – September 30, 2018 Payroll Summary Report;

      iii. October 1, 2018 – December 31, 2018 Payroll Summary Report;

      iv. January 1, 2019 – March 31, 2019 Payroll Summary Report;

4.    Federal Income Tax Returns (including forms and schedules) for [the
Company] for the period from ten years before the accident to the present; and

5.    Federal Income Tax Returns (including forms and schedules) for [Plaintiff] for
the period from three years before the accident through the present.

[ECF No. 30-2 at 3].

**A.     Monthly P&Ls**

First, Defendant seeks the Company's monthly P&Ls for five years prior to the accident

to the present.  [ECF No. 30-2 at 3].  She maintains that monthly data is needed to properly

analyze whether Plaintiff's absence from work caused financial loss.  [Id.].  Defendant claims

that such records are kept in the ordinary course of business and should be readily available and,

further, that having data from five years prior to the accident will allow her to accurately

determine the Company's profit and loss absent Plaintiff's alleged injuries.  [Id.].  Plaintiff

argues that the request is overbroad and that, even if older reports were provided, the more recent

reports would be afforded substantially more weight.  [ECF No. 32-1 at 4].

The Company's monthly P&Ls are plainly relevant to the loss, if any, the Company experienced due to Plaintiff's absence.  Although Plaintiff may be correct that older reports should be afforded less weight than the Company's more recent ones, such an argument goes to the weight of the evidence, not its relevance.  Notwithstanding Plaintiff's arguments to the contrary, Defendant's request is not too broad in scope.  Assessing the Company's earnings for the five years prior to the accident (i.e., from September 2013) through the present should provide Defendant with information concerning: (1) the pre-accident period; (2) the post-accident but pre-recovery period; and (3) the post-recovery period.  As Defendant notes, it is important to consider a large enough sample size to reflect "fluctuations in sales and expenses from year to year."  See [ECF No. 30-2 at 5].

As to Defendant's request for these monthly P&Ls "in electronic spreadsheet format," the Court notes that pursuant to Federal Rule of Civil Procedure 34(b)(2)(E), parties are required to produce documents "as they are kept in the usual course of business."  Fed. R. Civ. P. 34(b)(2)(E).  If monthly P&Ls are ordinarily maintained in spreadsheet form (e.g., in Excel files), they should be produced in that format but Plaintiff need not expend resources converting monthly P&Ls into spreadsheets for production if they do not already exist in that form.

The motion to compel is therefore granted as to the Company's monthly P&Ls from five years before the accident through the present.  If Plaintiff maintains monthly P&Ls in spreadsheet form, he shall produce them in that form.

### B.      Monthly Balance Sheets

Defendant also seeks the Company's monthly Balance Sheets ("B/Ss") from the five years prior to the accident through the present.  [ECF No. 30-2 at 5].

Plaintiff maintains that B/Ss simply provide a list of assets and liabilities at a given point in time and do not reflect the Company's earnings and expenses.  [ECF No. 32-1 at 4].

Additionally, in his affidavit, Plaintiff states that, in 2014, the Company suffered a computer malfunction rendering "all monthly computer-generated Balance Sheets from 2014 through the present [] not accurate" and that fixing the issue would require "hundreds of hours" of employee time.  [ECF No. 32-5 ¶ 4].

Plaintiff is correct that B/Ss do not reflect earnings and expenses over time but rather provide a snapshot of the Company's assets and liabilities as of a particular date.  Plaintiff has not alleged that the Company lost assets or gained liabilities because of the accident.  Rather, he has asserted that the Company's income was adversely affected by his incapacitation.  Defendant has failed to articulate a compelling, specific reason for obtaining monthly B/Ss, see [ECF No. 30-2 at 5 ("Monthly balance sheets will show the company's assets and liabilities for each month from January 2013 to present, *which is additional context into the financial position and activity of the company*.") (emphasis added)], and it is not clear what relevant information the B/Ss would contain that would not also be reflected in the P&Ls.  Given the marginal relevance of the Company's B/Ss, Plaintiff's arguments regarding the burden associated with production are more compelling.  Taking Plaintiff at his word, manually reinputting the corrupted financial data to allow for accurate, automated generation of monthly B/Ss would take "hundreds of hours." [ECF No. 32-5 ¶ 4].  The Court will not require Plaintiff to expend these resources to produce documents that are of minor significance.

Therefore, the motion to compel is denied as to the Company's monthly B/Ss.

### C.     Payroll Reports

Defendant next seeks certain Payroll Summary Reports ("PSRs") to determine, among other things, the role of various employees and officers in the Company, the correlation, if any, between Plaintiff's compensation and the Company's net income, and whether there were efforts to mitigate damages during Plaintiff's absence.  [ECF No. 30-2 at 6].  Defendant also notes that

Plaintiff has failed to produce documents demonstrating that he alone is entitled to the Company's net income.  [Id.].  Plaintiff's primary argument in opposition to Defendant's motion is that the PSRs "will not show any of what Defendant suggests to the court they will."  [ECF No. 32-1 at 6].  Specifically, he argues that the PSRs "do not contain the title or role of employees" and that Defendant does not need anything beyond publicly available records to verify that Plaintiff alone is entitled to the Company's net income.  [Id. at 6–7].[1]

Plaintiff's arguments are unpersuasive.  Because he has placed the Company's earnings and expenses at issue, Defendant is entitled to probe the Company's expenses, including payroll, over time.[2]  The fact that the PSRs do not contain the employees' titles or roles, see [ECF No. 32-5 ¶ 5], is not determinative of whether or not Defendant is entitled to them.  For example, with the benefit of the PSRs, Defendant would be able to ask Plaintiff about various employees by name during his deposition.

In the absence of any clear burden and given the relevance of the documents, the motion to compel is granted as to the requested Company PSRs.  Plaintiff shall provide the PSRs requested by Defendant.[3]

---

[1] In the Court's view, Plaintiff's argument regarding a power outage and corruption of data, see [ECF No. 32-1 at 7], is a clerical error.  Even though it is in the section of the brief discussing the PSRs, it references "Balance Sheets," [id.], and, based on Plaintiff's affidavit, which discusses what the PSRs show and do not show, it does not appear that the Company is incapable of accurately generating them automatically.  [ECF No. 32-5 ¶ 5]; see also [ECF No. 32-1 at 7 (concluding paragraph in PSR section of brief does not mention burden)].

[2] For the reasons outlined above, see supra, Section II.A, the Court views Defendant's request to be reasonable as to scope of time.

[3] Plaintiff contends that the PSRs contain "personal and confidential payroll information of employees that require protection."  [ECF No. 32-1 at 7].  To the extent this is the case, the parties should negotiate a protective order and confidentiality agreement to govern disclosure of sensitive information.

### D.      Company Tax Returns

Defendant seeks the Company's tax returns from ten years before the accident to the present to help determine whether the Company experienced losses attributable to Plaintiff's injuries.  [ECF No. 30-2 at 7].  Plaintiff claims that the Company's tax returns are privileged from discovery and duplicative of the P&Ls, which will provide all of the Company's sources of income, the costs of goods sold, the gross profits, operating expenses including payroll, insurance, and utilities, total expenses, and net income.  [ECF No. 32-1 at 8].

"It is well settled that tax returns do not enjoy an absolute privilege from discovery." Buntzman v. Springfield Redevelopment Auth., 146 F.R.D. 30, 32 (D. Mass. 1993) (citing St. Regis Paper Co. v. United States, 368 U.S. 208, 218–19 (1961)).  Tax returns are discoverable if "(1) they are relevant to the action and (2) the information which they contain is otherwise unobtainable."  Love v. Lord Nathan Rest Home, Inc., No. 06-cv-30021, 2007 WL 9799830, at *1 (D. Mass. April 3, 2007) (citing Buntzman, 146 F.R.D. at 32).  In Love, the court found that, although tax documents would generally be relevant because the plaintiff sought punitive damages, the plaintiff would have adequate means of discovering the necessary financial information because the defendants were otherwise providing statements of their financial worth. [Id.].  Therefore, although the Court finds that Plaintiff has put the Company's income directly at issue by claiming that he is entitled to the Company's lost profits, the relevant financial information will otherwise be available to Defendant through the Company's P&Ls.  The motion to compel is therefore denied as to the Company's tax returns.

### E.      Personal Tax Returns

Lastly, Defendant requests Plaintiff's personal tax returns, from three years prior to the accident to the present, to determine whether Plaintiff lost any personal income because of the accident.  [ECF No. 30-2 at 8].  Defendant also notes that the personal tax returns "will allow for

investigation into whether [Plaintiff] had other sources of income, employment, or business ventures around the time of the accident." [Id.]. Plaintiff again argues that his tax returns are protected from discovery and that, because he does not claim that he himself earned a lower salary, his personal finances are not at issue. [ECF No. 32-1 at 10]. He also argues that because he and his wife, Plaintiff Cynthia Driscoll, file their tax returns jointly, production of the joint return would constitute a "gross and unnecessary invasion of Mrs. Driscoll's privacy." [Id. at 10–11].

Although it is true that Plaintiff does not seek damages for his own lost wages, Defendant's argument regarding other sources of income has merit. Defendant is entitled to discover whether Plaintiff earned any income from outside the Company and whether Plaintiff's ability to earn such income was affected by the accident as that would be probative of his alleged incapacitation. With regard to Plaintiff's wife's personal privacy, she also is a named plaintiff in this action and therefore subject to discovery. Still, "[t]ax records are generally protected from discovery unless the court finds that they are relevant to the action and that there is a 'compelling need for the returns because the information contained therein is not otherwise readily obtainable.'" Fine v. Sovereign Bank, No. 06-cv-11450, 2010 WL 11575636, at *2 (D. Mass. Oct. 15, 2010) (quoting S.E.C. v. Cymaticolor Corp., 106 F.R.D. 545, 547 (S.D.N.Y. 1985)). Because the Court is not persuaded that the information in the tax returns is not otherwise readily available, the motion to compel is denied as to Plaintiff's personal tax returns. The parties are directed to meet and confer regarding the availability of alternative methods for Defendant to discover whether Plaintiff has other sources of income. Should Defendant seek to obtain discovery through additional interrogatories, the Court will permit Defendant to exceed the

twenty-five interrogatory limit set forth in Federal Rule of Civil Procedure 33 for this limited

purpose.  See Fed. R. Civ. P. 33(a)(1).

**III.       CONCLUSION**

Accordingly, Defendant's motion to compel production of financial records, [ECF No.

30], is GRANTED in part and DENIED in part.  Plaintiff must produce monthly P&Ls from

September 2013 through the present; year-end PSRs from 2013 through the present; and PSRs

for June 1, 2018 – September 30, 2018, October 1, 2018 – December 31, 2018, and January 1,

2019 – March 31, 2019.  Further, the parties are directed to meet and confer regarding the

availability of alternative methods whereby Defendant may obtain discovery as to whether

Plaintiff has any other sources of income.

**SO ORDERED.**

October 8, 2020                                                    /s/ Allison D. Burroughs
                                                                  ALLISON D. BURROUGHS
                                                                  U.S. DISTRICT JUDGE